**IN THE COURT OF APPEALS OF IOWA**

No. 13-1134
Filed May 29, 2014

**IN RE THE MARRIAGE OF KRISTOPHER DANIEL FIX
AND MALLORY BUCHER FIX**

**Upon the Petition of
KRISTOPHER DANIEL FIX,**
        Petitioner-Appellant,

**And Concerning
MALLORY BUCHER FIX,
n/k/a MALLORY BUCHER ROTH,**
        Respondent-Appellee.

_____

        Appeal from the Iowa District Court for Black Hawk County, Richard D.

Stochl, Judge.


        Petitioner appeals the district court order modifying the visitation

provisions of the parties' dissolution decree.  **AFFIRMED.**


        Kevin D. Engels of Correll, Sheerer, Benson, Engels, Galles & Demro,

P.L.C., Cedar Falls, for appellant.

        James T. Peters, Independence, for appellee.


        Considered by Danilson, C.J., Potterfield, J., and Eisenhauer, S.J.*

Bower, J., takes no part.

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2013).

**EISENHAUER, S.J.**

Kristopher Fix appeals the district court order modifying the visitation provisions in the parties' dissolution decree. We conclude the court properly made its own determination of the child's best interests instead of relying on recommendations made by the guardian ad litem (GAL). It is equitable for the parties to share transportation for visitation. We agree Mallory Roth (formerly known as Mallory Fix) should have eight weeks of visitation in the summer because it is not practical for her to continue to have mid-week visits. We affirm the decision of the district court.

## I. Background Facts & Proceedings

Kristopher and Mallory were previously married. They have one child, born in 2001. A dissolution decree entered December 17, 2003, granted the parties joint legal custody of the child, with Kristopher having physical care. Mallory was granted visitation on alternating weekends, one weekday evening, alternating holidays, and six weeks in the summer.

At the time of the dissolution, both parties lived in the Waterloo area. Mallory subsequently remarried and moved to Independence, Iowa. The parties entered into a stipulation in October 2010, and the decree was modified as to the pick-up and drop off times for visits and clarifying the holiday visitation provisions.

Kristopher filed a petition for modification on June 28, 2012, asking to have the visitation provisions modified because Mallory was planning to move to Humboldt, Iowa, which is about two hours away from Waterloo. He also stated the parties were unable to communicate and were having difficulty following the visitation schedule. Kristopher asked for the appointment of a GAL for the child.

The court appointed an attorney, Mark Milder, as the GAL, and he filed a written report.

A modification hearing was held on February 14, 2013. The main point of contention was whether the child's sporting activities should take precedence over visitation with Mallory. Kristopher asked to have Mallory responsible for all of the transportation, or have Mallory meet him earlier at a drop-off location at the end of visitation. He also asked to have Mallory's summer visitation reduced to four weeks. He stated he would like the child's extracurricular activities, such as softball and soccer, to take precedence over Mallory's visitation. Kristopher stated the parties were unable to communicate, therefore, the visitation schedule needed to be "basically black and white, nothing else." Mallory testified she moved to Humboldt due to her husband's employment. She proposed each party be responsible for half of the transportation.

The district court entered a decision on May 6, 2013. The court found there had been a substantial change in circumstances. The visitation schedule was modified to provide Mallory visitation on alternating weekends, alternating holidays, and eight weeks in the summer. For these visits, Mallory is responsible for transportation to pick up the child, and Kristopher is responsible for transportation to return the child. Mallory may exercise a mid-week evening visit, but she is responsible for all transportation for that visit. The court ordered if there was a conflict between the child's extracurricular activities and visitation, the visitation has priority.

Kristopher filed a motion pursuant to Iowa Rule of Civil Procedure 1.904(2). He noted the court had not referred to the GAL's report. The court

denied the motion, except for specifying Kristopher's time with the child on Father's Day.  Kristopher now appeals.

## II.  Standard of Review

In this equity action our review is de novo.  Iowa R. App. P. 6.907.  In equity cases, we give weight to the fact findings of the district court, especially on credibility issues, but we are not bound by the court's findings.  Iowa R. App. P. 6.904(3)(g).  There is a less demanding burden of proof for modifications of visitation than required for modifications of physical care.  *In re Marriage of Brown*, 778 N.W.2d 47, 52 (Iowa Ct. App. 2009).

## III.  GAL Report

Kristopher contends the district court failed to consider the report of the GAL.  In particular, he asserts the court should have given weight to the GAL's recommendations concerning transportation and summer visitation, which supported his own views.  In his petition for modification, Kristopher requested the appointment of a GAL, and in her answer Mallory agreed the appointment of a GAL would be helpful.  The GAL filed a written report, which both parties referred to during the modification hearing.

The court may consider the report of a GAL if it is properly before the court by agreement or stipulation.  *In re Marriage of Williams*, 303 N.W.2d 160, 163 (Iowa 1981).  While the court may consider the recommendations of a therapist or GAL, "[t]he legislature has granted to the court the responsibility to make an impartial and independent determination as to what is in the best interests of the child."  *In re Marriage of Stephens*, 810 N.W.2d 523, 530-31 (Iowa Ct. App.

2012). We conclude the court properly made its own determination of the child's best interests.

### IV. Transportation

Kristopher claims the court should not have required him to provide half of the transportation for visitation.[1] He points out Mallory had been picking the child up in Waterloo. On returning the child from visitation, the parties had been meeting in Iowa Falls, which is between Waterloo and Humboldt. He notes the GAL recommended the parties continue to follow this arrangement. Kristopher states the child gets home too late if he is responsible to pick her up. He blames Mallory's decision to move to Humboldt for causing the need for the modification of visitation.

We note the parties' dissolution decree provided transportation for the child would be equally divided. In the October 2010 stipulation, the parties agreed Mallory would provide transportation at the beginning of the visitation periods and Kristopher would provide transportation at the end of visitation. At the time of the modification hearing, however, Kristopher was only providing about one-fourth of the transportation. On examining the record, we conclude the most equitable solution is the one given by the district court, "[T]he parties shall share all transportation for visitation with Mallory picking up [the child] to start the visit and Kristopher picking her up at the conclusion of the visit." *See In*

---

[1] Kristopher's claims do not refer to the mid-week evening visitation in which Mallory is solely responsible for transportation. During the school year, these visits begin after school and end at 7:00 p.m. When school is not in session, the visits begin at 1:00 p.m. and end at 7:00 p.m. Mallory agreed she would be responsible for transportation for these visits, but testified she would not be able to exercise the visits.

*re Marriage of Scott*, 457 N.W.2d 29, 33 (Iowa Ct. App. 1990) (dividing transportation costs equally).

### V. Summer Visitation

Kristopher asserts the district court should have reduced Mallory's summer visitation to four weeks. The four-week period was recommended by the GAL. Kristopher believed he was not getting enough time with the child over the summer. He stated if the child spent more time in Waterloo in the summer it would facilitate her ability to play softball.

Mallory was awarded six weeks of summer visitation in the dissolution decree. In the parties' stipulation of October 2010 the parties agreed Mallory would continue to have six weeks of visitation in the summer. At the modification hearing Mallory asked for eight weeks of visitation in the summer because she would no longer be able to exercise mid-week visits. Mallory testified the child could participate in a softball team in Humboldt.

A visitation schedule must be in the best interests of a child and "assure the child the opportunity for the maximum continuing physical and emotional contact with both parents." Iowa Code § 598.41(1)(a) (2011). There is a "well-established principle that the best interests of children are ordinarily fostered by a continuing association with both parents." *Brown*, 778 N.W.2d at 52. We agree with the district court Mallory should have eight weeks of visitation in the summer because it is not practical for her to continue to have mid-week visits. As noted by the court, the child's time with her mother takes precedence over the child's extracurricular activities.

**AFFIRMED.**